UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MAGGIE LOWERY,                          )
      *Plaintiff*,                     )
                             )
      *vs.*                              )     1:12-cv-00007-JMS-MJD
                             )
GREATER CLARK COUNTY SCHOOLS, CORP.,     )
      *Defendant*.                     )

# <u>ORDER</u>[1]

      Presently pending before the Court is a Motion for Summary Judgment filed by Defendant Greater Clark County Schools, Corp. ("Clark County Schools"). [Filing No. 55.]

## I.
### STANDARD OF REVIEW

      A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissi-

---

[1] As part of the Court's pilot program regarding hyperlinking in Court filings, this Order contains hyperlinks to documents previously filed in this case, and to legal authority. Instead of the citation format "dkt. __ at __" used previously in this case, the Court now uses "Filing No. __, at ECF p. __" as its citation format. In certain instances, the Court has cited to documents filed under seal in this matter. Hyperlinks to those documents will only operate for users with authorized access to those documents.

ble in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898.

Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

After assessing the parties' claims in accordance with the standards outlined above, the Court concludes that Clark County Schools is entitled to summary judgment. Therefore, the facts detailed below contain all reasonable inferences in favor of *pro se* Plaintiff Maggie Lowery.[2] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986).

## II.
### BACKGROUND

The Court finds the following to be the undisputed facts, supported by admissible evidence in the record:[3]

### A. Ms. Lowery's Initial Employment

In August 2009, Maggie Lowery, who is African American, received a telephone call from Donna Mullins, Director of Human Resources at Clark County Schools, regarding an open teaching position for the 2009-2010 school year. [Filing No. 56-21, at ECF p. 15; Filing No. 56-

---

[2] The Court recognizes that it must view the facts in the light most favorable to Ms. Lowery, but Ms. Lowery must support the facts that she asserts with admissible, record evidence. Fed. R. Civ. P. 56(c)(1)(A). While Ms. Lowery takes issue with some of the facts Clark County Schools has presented, in most circumstances she has not submitted admissible evidence to counter those facts. Accordingly, the Court considers those facts undisputed. Fed. R. Civ. P. 56(e)(2).

[3] The Court notes that Clark County Schools' "Undisputed Material Facts" section in its opening brief does not comply with Local Rule 56-1(e), which states that "[a] party must support *each fact the party asserts* in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." Local Rule 56-1(e) (emphasis added). Clark County Schools did not provide citations for each fact, instead citing to evidence once at the end of several sentences or entire paragraphs. This practice made the Court's review of its briefs unnecessarily cumbersome, and is also risky given that the Court is under no obligation to locate support for facts that parties set forth without citation. *See also Thatcher v. Perkins*, 2013 U.S. Dist. LEXIS 91033, *14 (S.D. Ind. 2013) ("Strict compliance with Local Rule 56-1 is expected and required"); *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989) ("A district court need not scour the record to make the case of a party who does nothing").

24, at ECF p. 2.] The open position was for a home economics teacher at New Washington Middle-High School (the "School"). [Filing No. 56-21, at ECF p. 16.] Ms. Lowery met with the School's Principal, Ben Ledbetter, and the Vice Principal, Kevin Yancey. [Filing No. 56-21, at ECF p. 17.] She was favorably impressed with the School's home economics facilities. [Filing No. 56-21, at ECF p. 18.] Mr. Ledbetter called Ms. Lowery the day after her interview to offer her the teaching position, and she accepted the offer. [Filing No. 56-21, at ECF p. 19.] She went to the School to fill out paperwork, and subsequently signed an employment contract. [Filing No. 56-21, at ECF pp. 19-20; Filing No. 56-23, at ECF p. 36.]

Because the school year for teachers had already started, Ms. Lowery's contract was for a period of one hundred seventy-eight days instead of the one hundred eighty-five days the standard teachers' contract for that school year included. [Filing No. 56-24, at ECF p. 2.] Ms. Lowery had not yet been hired when the "startup days" for the 2009-2010 school year occurred, so was not present for them. [Filing No. 56-24, at ECF p. 2.] In addition to her teaching duties, Ms. Lowery was paid $345.13 for being the sponsor of a home economics club. [Filing No. 56-21, at ECF pp. 20-21.]

Upon her employment with Clark County Schools, Ms. Lowery completed a Confidential Emergency Information Sheet in which she stated that she had diabetes but was generally in good health. [Filing No. 56-21, at ECF pp. 22-23; Filing No. 56-23, at ECF p. 37.] She also listed several medications on the form, which she was taking for diabetes. [Filing No. 56-21, at ECF pp. 22-23; Filing No. 56-23, at ECF p. 37.]

**B. Ms. Lowery's Health Insurance**

Upon her hiring, Ms. Lowery also enrolled in health insurance coverage offered by Clark County Schools through Humana. [Filing No. 56-21, at ECF p. 21.] Ms. Lowery was under the

impression that she would not be covered under the Humana plan until she had been employed for one year. [Filing No. 56-21, at ECF p. 22.] The Humana plan did require that an employee be covered for one year before hospitalization for a pre-existing condition would be covered. [Filing No. 56-24, at ECF p. 4.] Ms. Mullins spoke with Sandy Duvall, a teacher and Union representative, to try to clarify Ms. Lowery's concerns regarding her coverage. [Filing No. 56-21, at ECF p. 22; Filing No. 56-24, at ECF p. 4.] Ms. Lowery's concerns related to coverage for her diabetes medication, and ultimately Humana provided coverage. [Filing No. 56-22, at ECF p. 25.]

Ms. Lowery frequently talked about her diabetes while employed by Clark County Schools. [Filing 56-21, at ECF p. 24.] She told Mr. Ledbetter and her students about it, so that they would know what to do if she had any issues. [Filing No. 56-21, at ECF p. 24.] Mr. Ledbetter asked her about her diabetes on a regular basis. [Filing No. 56-21, at ECF p. 25.]

**C. Ms. Lowery's Request to be Hired for After-School Activities**

While employed at Clark County Schools, Ms. Lowery expressed interest in being hired in connection with after-school activities for the athletic department, including as a track coach and a basketball coach. [Filing No. 56-22, at ECF p. 19.] All coaching positions had been filled the previous spring, however, long before Ms. Lowery was hired. [Filing No. 56-24, at ECF p. 4.]

**D. Incidents During the 2009-2010 School Year**

Shortly after the school year began, a paraprofessional arrived unannounced at Ms. Lowery's classroom to use one of the kitchens to bake cupcakes with a special education student. [Filing No. 56-21, at ECF pp. 26-27.] Ms. Lowery found this very distracting, and she confronted the paraprofessional who told her that it was part of the curriculum for the student she was

working with. [Filing No. 56-21, at ECF p. 27.] Ms. Lowery complained to Mr. Yancey about the situation, and he agreed that it was distracting and discussed the matter with Mr. Ledbetter. [Filing No. 56-21, at ECF p. 27.] Mr. Ledbetter then told Ms. Lowery that the paraprofessional had contacted the director of special education and complained that Ms. Lowery was discriminating against the student. [Filing No. 56-21, at ECF p. 28.] Mr. Ledbetter was not upset with Ms. Lowery about the situation, and met with the paraprofessional who then stopped coming in to bake cupcakes during Ms. Lowery's class time. [Filing No. 56-21, at ECF p. 28.]

Shortly thereafter, Ms. Lowery felt that the paraprofessional was bitter and started to talk about her behind her back with other staff members who then began acting resentful toward her. [Filing No. 56-21, at ECF pp. 29-30.] For example, staff members generally would notify Ms. Lowery via email if they were going to use the kitchens (which were part of the home economics classroom) after school to prepare food for athletic or other events. [Filing No. 56-21, at ECF p. 30.] But after Ms. Lowery complained about the paraprofessional using the kitchen during her classroom hours, the staff members stopped notifying her and would use the kitchens without Ms. Lowery being aware that they were going to do so. [Filing No. 56-21, at ECF pp. 30-31.] Ms. Lowery considered herself responsible for the kitchens because they were located in her classroom, and Mr. Ledbetter told her she was responsible for the contents of that classroom. [Filing No. 56-21, at ECF p. 31.] Sometimes the staff members that used the kitchen would not clean up, and Ms. Lowery had to do so the next morning or have her students help her during first-period class. [Filing No. 56-21, at ECF p. 31.] Ms. Lowery's main problem with the situation was that she wanted the staff members to use the same kitchen of the four kitchens available in her classroom, but they frequently used one of the three other kitchens. [Filing No. 56-21, at ECF p. 32.] No one authorized Ms. Lowery, however, to limit the staff members to using only

one of the available kitchens. [Filing No. 56-21, at ECF p. 32.] Ms. Lowery complained to Mr. Ledbetter about the situation, but it did not get better. [Filing No. 56-21, at ECF p. 33.] Once, Mr. Ledbetter discussed the situation with her during her planning period, and she became very upset and cried when he left, which the students observed when her first class period started. [Filing No. 56-22, at ECF p. 16.]

In November 2009, Ms. Lowery emailed the school media specialist to report that a printer in her classroom, which was used by other teachers as well, was broken. [Filing No. 56-22, at ECF pp. 9-10.] The media specialist accused Ms. Lowery of allowing her students to break it, but a technician eventually found that there was a dead mouse in the printer which was causing it not to work. [Filing No. 56-22, at ECF pp. 9-10.] The school media specialist never apologized to Ms. Lowery for accusing her of allowing the students to break the printer, which upset Ms. Lowery. [Filing No. 56-22, at ECF p. 10.] Ms. Lowery acknowledged, however, that she does not know if the media specialist was rude because Ms. Lowery is African American. [Filing No. 56-22, at ECF pp. 10-11.]

Around Thanksgiving in 2009, Ms. Lowery was asked to prepare a traditional Thanksgiving lunch for the staff, which she did. [Filing No. 56-22, at ECF p. 12.] She involved her students with the preparations, and received compliments regarding how nice the luncheon was. [Filing No. 56-22, at ECF p. 12.] She was upset, however, that none of the staff members helped her clean up afterwards. [Filing No. 56-22, at ECF pp. 12-13.] Ms. Lowery does not remember if she ever complained to Mr. Ledbetter regarding the lack of assistance. [Filing No. 56-22, at ECF p. 13.]

In January 2010, Jackie Love, the Multicultural Director for Clark County Schools, contacted Ms. Lowery to see if she wanted to plan a luncheon for the school administrators for Black

History Month. [Filing No. 56-21, at ECF pp. 33-34.] Ms. Lowery thought this was an appropriate request, and agreed to help out. [Filing No. 56-21, at ECF p. 34.] She discussed the matter with Mr. Ledbetter, and asked him if he could give her the names of some prominent people in the community to also invite, which he did. [Filing No. 56-21, at ECF p. 34.] Ms. Lowery planned a luncheon for thirteen to fifteen people to take place during a school day, and her students helped her prepare some of the food. [Filing No. 56-21, at ECF p. 35.] She contacted the athletic department beforehand to make sure they did not have any events scheduled for that day or the day before that would require use of the kitchens, and the director told her that nothing was scheduled. [Filing No. 56-21, at ECF p. 36.] Because of a snowstorm, however, a basketball sectional tournament game was re-scheduled for the day of the luncheon. [Filing No. 56-21, at ECF p. 36.] Ms. Lowery had emailed all of the staff to ask if they could move items out of the refrigerators temporarily, so that she could use the space for the luncheon. [Filing No. 56-21, at ECF p. 36.] She also asked the guidance counselor – who had planned to sell dinners to senior citizens the evening before the luncheon and usually did so out of the home economics kitchens – if she could instead sell the dinners out of the school cafeteria. [Filing No. 56-22, at ECF p. 2.] Ms. Lowery believed that the athletic director and the guidance counselor, who were husband and wife, were very upset by her request. [Filing No. 56-22, at ECF p. 3.]

Ultimately, the guidance counselor did not use the home economics kitchens to sell the senior citizen dinners, and Ms. Lowery was pleased with how her Black History Month luncheon went. [Filing No. 56-22, at ECF p. 3.] She felt that after the luncheon, however, the athletic director and the guidance counselor were no longer friendly to her. [Filing No. 56-22, at ECF p. 3.] She also believed that the guidance counselor talked about her to students and to other staff. [Filing No. 56-22, at ECF p. 4.]

Also during her employment, Ms. Lowery went to the local hardware store to buy some supplies for a class project with money in her teacher's account. [Filing No. 56-22, at ECF p. 18.] The owner of the hardware donated some materials to her class, including some used paint. [Filing No. 56-22, at ECF p. 18.] Later, she noticed while in the school office that the owner had submitted a form that he wanted a school official to sign for tax purposes regarding the donation, which listed the paint at full price even though it was used. [Filing No. 56-22, at ECF p. 18.] When Ms. Lowery asked the school administrator about it because the form had Ms. Lowery's name on it, the administrator told her to talk to Mr. Ledbetter. [Filing No. 56-22, at ECF p. 18.] When she did so, Mr. Ledbetter became upset. [Filing No. 56-22, at ECF pp. 18-19.]

**E. The Non-Renewal of Ms. Lowery's Employment Contract**

Toward the end of the 2009-2010 school year, Clark County Schools considered which teachers would be subject to a reduction in force ("RIF") for the 2010-2011 school year based on "a variety of factors, including budgetary constraints and loss of enrollment." [Filing No. 56-24, at ECF p. 3.] The process for selecting which teachers would be subject to RIF was also governed by the Clark County Schools' Collective Bargaining Agreement with the Teachers Union. [Filing No. 56-24, at ECF p. 3.] Initially, thirty-four positions were considered for reduction, and thirteen teachers were sent preliminary RIF notices. [Filing No. 56-24, at ECF p. 3.]

On May 28, 2010, the Superintendent of Clark County Schools, Stephen Daeschner, sent Ms. Lowery one of the thirteen preliminary RIF notices. [Filing No. 56-11.] The letter stated that Clark County Schools "does not have the financial ability to continue to employ [you]…." [Filing No. 56-11.] Shortly after receiving the letter, Ms. Lowery met with Marty Bell, the Chief Executive Officer of Clark County Schools. [Filing No. 56-22, at ECF p. 21.] At the meeting, Mr. Bell told Ms. Lowery that Clark County Schools had to eliminate some teaching positions

including hers.  [Filing No. 56-22, at ECF p. 21.]  Ms. Lowery told Mr. Bell that she could teach special education, but she did not have a license in Indiana to do so.  [Filing No. 56-22, at ECF p. 21.]

The Indiana Department of Education issues emergency permits to teachers to teach classes for which they are not properly licensed, if they agree that they will participate in the necessary or additional class work in order to earn a license in that area.  [Filing No. 56-24, at ECF p. 3.]  Ms. Lowery did not have a license to teach special education in Indiana, but declined to participate in the necessary class work that would have made her eligible for an emergency permit which would have allowed her to have a position teaching special education for the 2010-2011 school year.  [Filing No. 56-24, at ECF p. 3.]  Ms. Lowery also declined to take the Praxis exam which, if she had passed, would have licensed her in another area for which there were teaching openings in the 2010-2011 school year.  [Filing No. 56-24, at ECF p. 3.]  One other Clark County Schools teacher who received the initial RIF notice that Ms. Lowery received subsequently took the Praxis exam, which made him eligible for teaching openings for the 2010-2011 school year.  [Filing No. 56-12; Filing No. 56-14; Filing No. 56-15; Filing No. 56-24, at ECF p. 4.]  Another teacher who received the initial RIF notice enrolled in classes to earn credits toward a special education teaching license, which qualified him for an emergency permit for the 2010-2011 school year.  [Filing No. 56-13; Filing No. 56-16; Filing No. 56-24, at ECF p. 4.]

On July 2, 2010, Mr. Daeschner sent Ms. Lowery a letter advising her that the School Board had postponed its vote on the non-renewal of her contract until July 20, 2010.  [Filing No. 56-23, at ECF p. 43.]  On July 23, 2010, Ms. Mullins sent Ms. Lowery a memo stating: "The recommendation for a [RIF] of your position as Family Consumer Science Teacher at New Washington Middle/High School, effective End of 2009/2010 summer school, was approved by

the Board of School Trustees on July 20, 2010." [Filing No. 56-23, at ECF p. 44.] As of November 2013, none of the classes which Ms. Lowery taught during the 2009-2010 school year had been reinstated. [Filing No. 56-24, at ECF p. 4.]

### F. The EEOC Charge and the Lawsuit

In November 2010, Ms. Lowery filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC"). [Filing No. 8-1, at ECF p. 3.] In the Charge, Ms. Lowery asserted discrimination based on race, age, sex, and disability. [Filing No. 8-1, at ECF p. 3.] The EEOC issued a right to sue letter on March 24, 2011. [Filing No. 8-1, at ECF p. 1.]

Ms. Lowery filed her initial Complaint on January 3, 2012, [Filing No. 2], and the operative Amended Complaint on January 4, 2013, [Filing No. 8]. She asserted claims pursuant to: (1) Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) the Age Discrimination in Employment Act ("ADEA"); (3) the Americans with Disabilities Act ("ADA"); (4) the Rehabilitation Act, 29 U.S.C. §§ 794-94e; and (5) 42 U.S.C. § 1981. [Filing No. 8, at ECF pp. 1-2.] Clark County Schools moved to dismiss the Amended Complaint, [Filing No. 14], and the Court granted the motion in part to the extent that it dismissed Ms. Lowery's Title VII, ADEA, ADA claims because they were asserted more than ninety days after Ms. Lowery received her right to sue letter, but denied the motion in part to the extent that Ms. Lowery's Rehabilitation Act claim and her § 1981 claim based on failure to enter into a contract were not time-barred and to the extent Ms. Lowery had adequately alleged a § 1981 claim based on hostile work environment, [Filing No. 17]. Accordingly, her Rehabilitation Act claim and her § 1981 discrimination and hostile work environment claims are the only claims that remain.

**A. Rehabilitation Act Claim**

In connection with Ms. Lowery's Rehabilitation Act claim, Clark County Schools argues that Ms. Lowery has not presented any evidence that she "has a physical or mental impairment that substantially limits one or more major life activities." [Filing No. 56, at ECF p. 17.] It also asserts that she has not presented any evidence that Clark County School has "regarded her as having an impairment," such that it took action because of that impairment. [Filing No. 56, at ECF p. 17.] Clark County Schools also contends that Ms. Lowery's position was eliminated because of budgetary issues, that she did not take the necessary classes in order to be eligible for an emergency permit or take the Praxis exam, and that there is no evidence her position was eliminated because of a disability. [Filing No. 56, at ECF p. 18.] Finally, Clark County Schools argues that even if Ms. Lowery could establish a prima facie case of a Rehabilitation Act violation, she cannot show that the proffered reason for eliminating her position and ending her contract was pretextual. [Filing No. 56, at ECF pp. 18-19.]

In response, Ms. Lowery argues that her diabetes was a disability and submits documents from the Social Security Administration. [Filing No. 63-1, at ECF p. 1; Filing No. 63-2.] She also asserts that her condition "worsened severely" after she began working at Clark County Schools, and that she had to seek additional treatment for depression and insomnia. [Filing No. 63-1, at ECF p. 2.] Ms. Lowery also alludes to her perceived issues with her Humana health insurance coverage, but then says that Humana ultimately covered her prescriptions. [Filing No. 63-1, at ECF pp. 2-3.]

Clark County Schools replies by arguing that the documents Ms. Lowery submitted are inadmissible and, in any event, do not demonstrate that she was disabled while employed by

Clark County Schools. [Filing No. 66, at ECF p. 5.] It also asserts that Ms. Lowery has not submitted any evidence to support her claim, and has not addressed the arguments advanced by Clark County Schools. [Filing No. 66, at ECF p. 6.]

The Rehabilitation Act "'prohibit[s] an employer from discriminating against a qualified individual with a disability because of the disability.'" *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005) (quoting *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999)). To establish a prima facie case for a Rehabilitation Act claim, Ms. Lowery must prove that she "(1) falls within the ADA's statutory definition of 'disabled,' meaning that she has a 'physical or mental impairment that substantially limits a major life activity, a record of such impairment, or [is] regarded as having such impairment,'…; (2) is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) has suffered an adverse employment decision because of the disability." *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008). Because the Rehabilitation Act employs the same standards as the ADA, precedent under the ADA is instructive. *Id.*

Ms. Lowery's Rehabilitation Act claim suffers from several fatal defects. First, she has not submitted admissible evidence demonstrating that she was disabled while employed by Clark County Schools. She submits records which appear to be related to her application for disability benefits from the Social Security Administration, [Filing No. 63-2; Filing No. 63-3], but those documents are not certified as required by Fed. R. Ev. 902. And, in any event, the documents only show that the Social Security Administration determined Ms. Lowery was disabled as of April 28, 2011 – the date Ms. Lowery provided in her application as the onset date of her disability. [Filing No. 63-2, at ECF p. 1.] On April 28, 2011, Ms. Lowery no longer worked for Clark

County Schools, and had not worked there for several months.[4]  Accordingly, she has failed to show that she fell within the ADA's definition of "disabled," as required to establish a prima facie case under the Rehabilitation Act.

Second, even if Ms. Lowery had shown that she was "disabled," she has not presented evidence showing that she suffered an adverse employment decision because of her disability. While the evidence indicates that Mr. Ledbetter and others at Clark County Schools knew that Ms. Lowery had diabetes, there is no evidence that Clark County Schools eliminated her position because she was diabetic, or failed to hire her for another position afterward for that reason.  To the contrary, the undisputed evidence shows that thirteen other teachers received preliminary RIF notices.  [Filing No. 56-24, at ECF p. 3.]  Additionally, the evidence indicates that Ms. Lowery's RIF was consistent with the terms of the Collective Bargaining Agreement, which provided that "[a]fter the elimination of a teaching position, and if a school employee is not certified to teach any of the remaining teaching positions in the School Corporation, that school employee shall be the first to be laid off."  [Filing No. 56-5, at ECF p. 28.][5]  When Ms. Lowery received her RIF notice, Mr. Bell met with her to discuss ways that she could make herself eligible for another teaching position for the following school year.  [Filing No. 56-24, at ECF p. 3.]  Unlike at least two other teachers who received RIF notices, Ms. Lowery declined to take any of those steps,

---

[4] Indeed, Ms. Lowery's deposition testimony indicates that her diabetes did not interfere with her ability to perform her job at Clark County Schools.  She testified that her diabetes did not affect her ability to teach, and teaching did not make her diabetes worse.  [Filing No. 56-22, at ECF pp. 31-32.]

[5] The Collective Bargaining Agreement also provided that no employee shall be laid off if there is an employee with less seniority in a position for which the employee with more seniority is certified.  [Filing No. 56-5, at ECF p. 28.]  Because Ms. Lowery was hired after the 2009-2010 school year began, she would have been among those teachers with the least seniority when the RIF decisions were made.

and therefore did not qualify for either an emergency or regular license to teach another subject.[6] [Filing No. 56-24, at ECF pp. 3-4.]  There simply is no evidence that her position was eliminated due to her diabetes and not due to budgetary concerns, or that she was not hired for another position due to her diabetes instead of because she did not take any steps to become eligible to teach other subject.[7]

Because she cannot prove a prima facie case of violation of the Rehabilitation Act, her claim fails as a matter of law and Clark County Schools is entitled to summary judgment on her claim.

### B.  Section 1981 Claim for Failure to Enter Into a Contract

Ms. Lowery alleges that Clark County Schools discriminated against her by failing to enter into a coaching contract with her for the 2009-2010 school year, and by failing to enter into an employment contract with her for the 2010-2011 school year.  To succeed on a § 1981 claim, Ms. Lowery must either provide direct evidence of discrimination, *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004), or show indirect evidence under the burden-shifting analysis of *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).  *See Vakharia v. Swedish*

---

[6] Ms. Lowery initially told Mr. Bell that she was licensed to teach special education, and submitted a Georgia license and a Kentucky emergency license to teach special education with her response to the Motion for Summary Judgment, [Filing No. 63-10, at ECF p. 3; Filing No. 63-10, at ECF p. 6].  These documents are not authenticated so are not admissible evidence.  And, in any event, she has not presented any legal authority or argument indicating that the Georgia or Kentucky licenses would authorize her to teach special education in Indiana.

[7] Because Ms. Lowery has failed to prove a prima facie case of violation of the Rehabilitation Act, the Court need not address whether Clark County Schools' reasons for eliminating her position and failing to hire her for another position were pretextual.  But, in any event, they were not.  Again, there is no evidence contradicting Clark County Schools' reason for eliminating the home economics teaching position (budgetary constraints) and its reason for not hiring Ms. Lowery for another teaching position (she did not possess the necessary licenses, and had not taken any action to acquire them).

*Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999) (holding that same frameworks are used to analyze § 1981 and Title VII claims).

To survive summary judgment, Ms. Lowery must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Specifically, she must show that: (1) she was a member of a protected class; (2) she adequately performed her employment responsibilities; (3) despite adequate performance, she suffered an adverse employment action; and (4) she received different treatment than similarly situated persons who were not members of the same protected class. *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790 (7th Cir. 2007) (citation omitted). If Ms. Lowery can make that showing, the burden shifts to Clark County Schools to come forth with a "legitimate, non-discriminatory reason" for its actions. *Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010) (citation omitted). If Clark County Schools can do so, it will prevail unless Ms. Lowery can come forward with evidence that the proffered non-discriminatory reason is "a pretext for intentional discrimination." *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 551 (7th Cir. 2011) (citation omitted).

### 1. Failure to Enter Into Coaching Contract

As to Ms. Lowery's claim that Clark County Schools discriminated against her by failing to enter into a coaching contract, Clark County Schools argues that Ms. Lowery was given a position supervising a home economics club and was paid for it, that she was not given a coaching position because all positions had been filled the previous spring (before she was hired), and that those who were hired to help with the volleyball sectional (which was the only after-school event for which hiring was not complete) all had prior experience in that area and Ms. Lowery did not. [Filing No. 56, at ECF p. 20.]

Ms. Lowery responds that "exhibits will show" that Clark County Schools hired people who were not even employed at the school for after-school work, and that she was required to do after school shopping trips using her personal vehicle for school supplies. [Filing No. 63-5, at ECF p. 1.] She also argues that the home economics program she taught only met before school. [Filing No. 63-5, at ECF p. 2.]

Ms. Lowery cannot satisfy the third element of a prima facie case of discrimination. She has not presented any evidence to contradict Clark County Schools' evidence that all coaching positions had already been filled by the time Ms. Lowery was hired. [Filing No. 56-24, at ECF p. 4.] And even if failure to hire her to help with the volleyball sectional could be considered an adverse employment action, Ms. Lowery has not presented evidence showing that she received different treatment than similarly situated individuals not in her protected class. She has not presented any evidence that she had prior experience assisting with this type of event – as the fourteen individuals who were hired to help did. [Filing No. 56-24, at ECF p. 4.] Finally, even if Ms. Lowery could make out a prima facie case, there simply is no evidence that Clark County Schools' decision to not hire her for an after-school position was motivated by discrimination.[8] Her Section 1981 claim for failure to enter into a coaching contract fails as a matter of law.

### 2. Failure to Enter Into a Contract for the 2010-2011 School Year

As to Ms. Lowery's claim that Clark County Schools discriminated against her by failing to enter into a teaching contract with her for the 2010-2011 school year, Clark County Schools argues that Ms. Lowery cannot meet the fourth element of a prima facie case – that she was treated differently than similarly situated individuals not in her protected class. [Filing No. 56, at

---

[8] Ms. Lowery fails to explain how her allegation that she was required to use her personal vehicle to shop for school supplies supports her discrimination claim, and the Court does not see a connection. Further, Ms. Lowery does not include this allegation in her EEOC Charge and so cannot raise it for the first time here.

ECF p. 21.] It notes that no other individuals who received initial RIF notices refused to pursue additional classes or sit for the Praxis test, as Ms. Lowery did. [Filing No. 56, at ECF p. 21.] Clark County Schools also argues that even if Ms. Lowery could make out a prima facie case, it has shown that it had legitimate, non-discriminatory reasons for not contracting with her for the 2010-2011 school year, including budgetary concerns, a decline in enrollment, and Ms. Lowery's refusal to take the actions necessary to make her eligible for an open position. [Filing No. 56, at ECF pp. 21-22.]

Ms. Lowery responds that she was more qualified to teach special education than an individual who was eventually hired for that position, that she was the only teacher to not be offered a renewed contract for the 2010-2011 school year, and that some of the classes she previously taught were given to a newly hired male. [Filing No. 63-5, at ECF p. 1.]

Clark County Schools replies that Ms. Lowery has not presented any evidence showing she was licensed to teach special education in Indiana or that a male was given some of her classes to teach, and that she has not refuted evidence showing that she was unwilling to take additional classes or the Praxis exam. [Filing No. 66, at ECF pp. 7-9.]

Ms. Lowery's claim related to failure to enter into a contract for the 2010-2011 school year is fatally flawed because she has not presented any evidence showing that a similarly situated individual not in her protected class was treated more favorably. Other individuals who received initial RIF notices but ultimately were hired for the 2010-2011 school year either took classes or sat for the Praxis exam, both of which Ms. Lowery refused to do. [Filing No. 56-24, at

ECF pp. 3-4.]  Additionally, Ms. Lowery has not presented any evidence showing that her classes were transferred to another teacher for the 2010-2011 school year.[9]

Finally, as with her claim based on failure to hire for a coaching position, even if she could prove a prima facie case, Ms. Lowery has not put forth any evidence that conflicts with Clark County Schools' proffered reasons for not hiring her for the 2010-2011 school year.  Indeed, the evidence is consistent with Clark County Schools' rationale for not hiring her, which included budgetary concerns, decreased enrollment, and Ms. Lowery's lack of qualifications (and unwillingness to obtain those qualifications).  There is no evidence that the decision not to hire Ms. Lowery for the 2010-2011 school year had anything to do with her race.  Clark County Schools is entitled to summary judgment on Ms. Lowery's Section 1981 claim based on failure to hire her for the 2010-2011 school year.

### C.  Section 1981 Hostile Work Environment Claim

Clark County Schools argues that Ms. Lowery's hostile work environment claim fails because she has not presented evidence that she suffered harassment that was objectively hostile. [Filing No. 56, at ECF pp. 22-23.]  It also asserts that Ms. Lowery cannot show that there was anything physically threatening, humiliating, or offensive at her workplace, and argues that Ms. Lowery was able to perform her job so she "had no interference with her assigned duties." [Filing No. 56, at ECF p. 23.]

In her response, Ms. Lowery submits the following documents which she contends support her hostile work environment claim:

- An email from Mr. Ledbetter regarding the paraprofessional using Ms. Lowery's classroom, in which Mr. Ledbetter states that he has spoken to all parties

---

[9] Ms. Lowery merely identifies the other teacher as a "male."  But she is not suing for gender discrimination, and also does not specify whether he is not in her protected class (*i.e.*, not African American).

involved and that "I appreciate everyone working together to make [the student's] experience as positive as possible without disrupting the daily curriculum." [Filing No. 63-14];

- Emails between Ms. Lowery and Mr. Ledbetter where Ms. Lowery advises Mr. Ledbetter that she is organizing a canned goods project to benefit the American Legion, that a woman had complained because a previous teacher had collected canned goods for a local food bank instead, but that Ms. Lowery wanted to continue doing the project to benefit the American Legion. Mr. Ledbetter responded "I think sticking with the American Legion project is the right thing to do….Just because [the previous teacher] did it one way does not mean you have to do it that way...." [Filing No. 63-15];

- An email from Ms. Lowery to Mr. Ledbetter asking him to advise staff who use the home economics department to clean up or request that the custodial staff clean up, and stating that "[w]e have not had any problems with the kitchen area this year…but another group used the sewing room Friday night and left a mess," and an email where another staff member denies leaving a mess in the area. [Filing No. 63-16];

- An email string between Ms. Lowery and another staff member where the staff member – in an apparent response to Ms. Lowery complaining that an icon on her computer was black and other staff members did not have black icons – stated "If it makes you feel any better, I just sat down at my new computer and looked at my icon, and I have a black one too….I will still ask the techs if they can change it for you." Ms. Lowery responded that "[s]ome things that seem normal to some may be quite offensive to others from different cultur[es]." [Filing No. 63-17];

- An email string related to Ms. Lowery requesting a new name badge because her last name was misspelled. [Filing No. 63-18];

- An email string where a staff member advises Ms. Lowery that an area where she had planned to do some outdoor planting was going to be used for an outdoor learning lab, but that the design included some outdoor planting so Ms. Lowery's input was welcome. Ms. Lowery responded that she was not aware of that plan, and that "[w]e will not [bother] the area and will leave it for you to use." [Filing No. 63-19];

- An email from Ms. Lowery to staff stating that the home economics area will be unavailable for use on the evening of February 17 because she is hosting an event the following day, and to "please remove bottle juices and store them somewhere else until the evening of February 18th." [Filing No. 63-20]; and

- An email string where Mr. Ledbetter advises Ms. Lowery that he gave the boys' basketball boosters and parents permission to use the home economics

area to feed the team on March 1, 2010.  Ms. Lowery responds that they have been using it all year, and she has "had no problem with them using it," except for on February 17.  [Filing No. 63-21].

Clark County Schools replies that the emails Ms. Lowery has submitted do not amount to evidence of a hostile work environment.  [Filing No. 66, at ECF pp. 11-14.]

"An actionable hostile environment claim requires the plaintiff to prove: (1) that the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) that there is a basis for employer liability." *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005).  The employee must also show either that a supervisor participated in the harassment that created the hostile work environment, or that the employer was negligent in discovering or remedying it.  *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 848 (7th Cir. 2008).  Conduct cannot aid in creating a hostile work environment unless it has "a racial character or purpose." *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004).  The factors the Court may consider "in deciding whether the environment is hostile include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 2014 U.S. App. LEXIS 368, *24 (7th Cir. 2014) (citation and quotation marks omitted).  "[T]he workplace that is actionable is the one that is hellish." *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004) (citations and quotation marks omitted).

The evidence – even when viewed in the light most favorable to Ms. Lowery – is not adequate to support a hostile work environment claim.  First, the evidence shows that when Ms. Lowery complained to Mr. Ledbetter about the paraprofessional using her classroom, he ad-

dressed the situation and it did not happen again.  Second, Ms. Lowery has not presented evidence that issues surrounding other staff members using the kitchen facilities were pervasive or severe.  Third, any resistance Ms. Lowery met from an unidentified woman regarding her decision to benefit the American Legion with the canned food drive cannot support a hostile work environment claim and, in any event, Mr. Ledbetter supported Ms. Lowery's decision.  Fourth, there is no evidence indicating that the color of the icon on her computer or the misspelling of her name on her badge had anything whatsoever to do with her race.  Fifth, the outdoor planting incident does not demonstrate any type of harassment – Ms. Lowery was invited to give her input as to where the outdoor garden should go, and she declined.  And finally, Ms. Lowery does not point to any evidence that would allow a reasonable jury to conclude that any of these incidents had anything to do with her race.

In short, Ms. Lowery has not presented any evidence that her workplace environment was "hellish."  While Ms. Lowery may have perceived the actions of certain staff members as rude or unfriendly, the incidents she details are not the type that are actionable under Section 1981 as a hostile work environment.  *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 647 (7th Cir. 2011) (plaintiff must present evidence that conduct at issue was severe and pervasive enough to cause psychological injury); *McKenzie v. Illinois DOT*, 92 F.3d 473, 480 (7th Cir. 1996) ("isolated and innocuous incidents will not support a hostile environment claim").  The law simply does not guarantee a happy workplace.  *Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002).  Clark County Schools is entitled to summary judgment on Ms. Lowery's hostile work environment claim.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Clark County Schools' Motion for Summary Judgment, [Filing No. 55].  Judgment will enter accordingly.

**Distribution via ECF only:**

Marsha Volk Bugalla
FROST BROWN TODD LLC
mbugalla@fbtlaw.com

Anthony W. Overholt
FROST BROWN TODD LLC
aoverholt@fbtlaw.com

Thomas E. Wheeler II
FROST BROWN TODD LLC
twheeler@fbtlaw.com

**Distribution via U.S. Mail:**

MAGGIE LOWERY
2505 13th Avenue South, Apt. 305
Grand Forks, ND 58201